IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **SAMANTHA A. SAMPLES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-05-667-M** |
| | ) | |
| **JO ANNE B. BARNHART, Commissioner, Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**REPORT AND RECOMMENDATION**

Samantha A. Samples ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's applications – as a child and as an adult – for supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636. Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings.

**Administrative Proceedings**

Plaintiff's mother initiated these proceedings on Plaintiff's behalf in December, 2001, by filing a claim for supplemental security income payments, alleging that Plaintiff had been disabled since August 31, 1984 – Plaintiff's birth date – due to a learning disability [Tr. 78 - 80 and 107]. The claim was denied, and a de novo hearing before an administrative law judge was set at Plaintiff's request ("ALJ") [Tr. 34 - 37, 39 - 41, 42 and 46 - 49]. Plaintiff failed to appear, and the Administrative Law Judge ("ALJ") dismissed

the request for hearing [Tr. 30 - 31]. Upon review of this decision, the Appeals Council vacated the ALJ's order of dismissal [Tr. 56 - 57]. Plaintiff then filed, on her own behalf, a new application for supplemental security income payments in February, 2004, once again claiming disability as a result of a learning disability that began at birth, July 31, 1984[1] [Tr. 89 - 101]. This application was also denied [Tr. 59 - 61 and 63 - 64]. A hearing – considering both the new and the remanded applications – was subsequently conducted by an ALJ in November, 2004 [Tr. 365 - 401]. The ALJ found in his December, 2004, hearing decision that while Plaintiff suffered from mental retardation, she was not under a disability when under the age of 18 [Tr. 13 - 23]; neither did a learning disability and asthma prevent her from performing a significant number of jobs available in the national economy after reaching the age of 18. *Id.* Consequently, no disability was found within the meaning of the Social Security Act. *Id.* The Appeals Council denied review, and Plaintiff subsequently sought review of the Commissioner's final decision in this court [Tr. 5 - 8].

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Doyal v. Barnhart***,** 331 F.3d 758, 760 (10th Cir. 2003). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial

[1] As previously noted, the initial application filed on Plaintiff's behalf stated that her birth date was August 31, 1984 [Tr. 78 - 80].

evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act provides that "[a]n individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c (a) (3) (c) (I). The Commissioner applies a three-step sequential inquiry to determine whether an individual under the age of 18 is disabled. *See* 20 C.F.R. § 416.924 (a). At the first step, it is determined whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924 (b). If not, the inquiry continues to the second step for consideration of whether the child has a severe medically determinable impairment(s). 20 C.F.R. § 416.924 (c). If so, the question at the third step is whether such impairment(s) meets, medically equals, or functionally equals a listed impairment. 20 C.F.R. § 416.924 (d). A finding that a child is not disabled is made if the impairment(s) does not meet the twelve-month duration requirement or if the impairment does not meet, medically equal, or functionally equal the listings. 20 C.F.R. § 416.924 (d) (2).

With respect to an adult claimant, the Social Security Act defines "disability" as

the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. §§ 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Where Plaintiff makes a prima facie showing that she can no longer engage in prior work activity or where, as here, Plaintiff has no past relevant work, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner ,* 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

**<u>Plaintiff's Claims of Error</u>**

Plaintiff contends that the ALJ erred by failing to conclude at step three of the sequential analysis that Plaintiff was presumptively disabled under Listing 12.05C[2] after

---

[2]*See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. Listing 12.05 of this provision, the listing for mental retardation in an adult, provides:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, § 12.05.

The requirements of § 12.05C, the specific provision at issue here, are "[a] valid verbal, (continued...)

having determined that Plaintiff had an I.Q. (full scale) of 65 along with a physical impairment – asthma – that imposed a work-related limitation of function. In addition, Plaintiff maintains that the ALJ's analysis at step three was legally deficient and, further, that the ALJ erred in his credibility analysis.

Remand is recommended in this case due to the ALJ's failure at step three to address the introductory paragraph of Listing 12.05[3] and to then provide a reviewable analysis of Plaintiff's deficits in adaptive functioning, if any. Plaintiff's credibility argument will not be addressed as the evidence on credibility could be impacted by additional proceedings on remand. *See Watkins v. Barnhart,* 350 F.3d 1297, 1299 (10th Cir. 2003).

**Analysis**

Neither Plaintiff nor the Commissioner questions that the two requirements of Listing 12.05C were satisfied in Plaintiff's case: she had a valid verbal I.Q. of 68, a performance I.Q. of 67, a full scale I.Q. of 65 and, in addition, she had asthma, a physical impairment that imposed a significant work-related limitation. Consequently, the required level of severity was met for a mental retardation disorder. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, § 12.05C. The dispute arises with Plaintiff's argument that because the ALJ found both of these requirements had been satisfied, he erred in not

[2](...continued)
performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, § 12.05C.

[3]Plaintiff's claim of error is limited to Listing 12.05 and, thus, to her alleged mental retardation as an adult claimant.

further finding that Plaintiff was presumptively disabled under the listing. The Commissioner, on the other hand, maintains that before Plaintiff can rely on §12.05C to establish the required severity level of her impairment, she must first prove that her impairment satisfies the following diagnostic description for mental retardation found in the introductory paragraph of Listing 12.05: "significantly subaverage general intellectual functioning with deficits in adaptive functioning." 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, §12.05.

As the Commissioner correctly contends, Amendments made to Listing 12.05 in 2000 added this additional requirement which must be established by a claimant in order to meet the listing for mental retardation. A claimant will meet that listing only "[i]f [claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria. . . ." 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, §12.00A (emphasis added). *See* 65 Fed. Reg. 50,746, 50,776 (Aug. 21, 2000). The introductory paragraph mandates that a claimant first establish "significantly subaverage general intellectual functioning with deficits in adaptive functioning. . . ." 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, § 12.05.

The manner in which the required deficits in adaptive functioning are to be measured was addressed by the Commissioner in final regulations, effective May 24, 2002, – prior to the final decision here – which "make a number of technical revisions to the Listing of Impairments (the listings)." 67 Fed. Reg. 20,018. With respect to the definition of mental retardation ("MR") used in the introductory paragraph of Listing 12.05, the Commissioner explained:

> The definition of MR we use in our listings is consistent with, if not identical to, the definitions of MR used by the leading professional organizations. The four major professional organizations in the United States that deal with MR have each established their own definition of MR. While all of the definitions require significant deficits in intellectual functioning, as evidenced by IQ scores of approximately 70 or below, age of onset and the method of measuring the required deficits in adaptive functioning differ among the organizations.
>
> * * *
>
> The definition of MR used by SSA in the listings is not restricted to diagnostic uses alone, nor does it seek to endorse the methodology of one professional organization over another. While capturing the essence of the definitions used by the professional organizations, it also is used to determine eligibility for disability benefits. SSA's definition establishes the necessary elements, while allowing the use of any of the measurement methods recognized and endorsed by the professional organizations.

67 Fed. Reg. at 20,022.

Here, the Commissioner argues that "substantial evidence in the record supports the finding that Plaintiff does not meet Listing 12.05 because she has not demonstrated the requisite deficits in adaptive functioning." [Doc No. 15, page 6]. The Commissioner points to the ALJ's findings that Plaintiff had no limitations in attending or completing tasks, nor in interacting and relating with others, nor in moving about and manipulating objects, nor in caring for herself, nor in her health and physical well being. Other findings by the ALJ as noted by the Commissioner include Plaintiff's ability to understand, remember, and carry out simple, but not detailed, instructions under routine supervision as well as her ability to relate to the general public, co-workers, and supervisors in an incidental fashion. Additional findings by the ALJ that the Commissioner maintains are supportive of Plaintiff's level of functioning include her average activities of daily living, her ability to drive a car with a valid drivers' license,

and the fact that she has an older boyfriend. *Id.* at pages 5 - 6.

In his decision, the ALJ clearly attempted to meet his obligation "to discuss the evidence and explain why he found that [Plaintiff] was not disabled at step three." *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996). He stated that Plaintiff had a learning disability[4] and asthma, both of which were "severe" but not "severe" enough to meet or medically equal a listed impairment [Tr. 19]. He further stated that he had "considered Listing 12.05 (mental retardation)" in making his determination. *Id.* Next, he mentioned that Plaintiff was not receiving any treatment, was not on any medications although she did, however, have a marked impairment in acquiring and using information as a result of her I.Q. level. He then proceeded to reference the evidence, detailed above, which the Commissioner claims supports the conclusion that Plaintiff has not demonstrated the requisite deficits in adaptive functioning to satisfy Listing 12.05.

The flaw in the ALJ's step three analysis is not his failure to discuss the evidence and to explain his reasoning but is, instead, his failure to "choose and apply one 'of the measurement methods recognized and endorsed by [one of] the [four major] professional organizations' dealing with mental retardation." *Barnes v. Barnhart,* No. 02-5153, 2004 WL 2681465, at *5 (10th Cir. Nov. 26, 2004) (quoting 67 Fed.Reg. at 20,022)).[5] There is no indication that the ALJ was utilizing a particular measurement standard endorsed by a professional organization involved with mental retardation. It appears, in fact, that he

[4]The ALJ offers no explanation for his conclusion that as an adult, Plaintiff suffered from a learning disability while he determined that as a child, she suffered from mental retardation [Tr. 22].

[5]This and any other unpublished decision are cited herein as persuasive authority pursuant to Tenth Circuit Rule 36.3.

was simply repeating his findings made with regard to the six domains of functioning used in determining functional equivalence to limitations found in mental disorder listings for children under age 18. *See* 20 C.F.R. §416.926a (b) (1) (I - vi); [Tr. 15 - 16]. Absent the identification of a recognized method of measuring deficits in adaptive functioning, the ALJ's step three analysis is legally deficient, and remand is recommended. *See Barnes,* 2004 WL 2681465, at *5("The ALJ must identify which standard he has selected so that this court will be able to provide a meaningful review.").

**RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the foregoing reasons, it is recommended that this matter be reversed and remanded for further proceedings in accordance with this report. The parties are advised of their right to object to this Report and Recommendation by March 20, 2006, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 28th day of February, 2006.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE